UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| BETTY JEAN GEEL | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:12-CV-377 |
| v. | ) | (COLLIER/CARTER) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income under Title XVI of the Social Security Act.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of:

(1)     The plaintiff's Motion for Judgment on the Pleadings (Doc. 10), and

(2)     The defendant's Motion for Summary Judgment (Doc. 12)

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

### Plaintiff's Age, Education, and Past Relevant Work Experience

Plaintiff was 43-years old when the ALJ issued his July 2011 decision (Tr. 22, 89).    She has a general equivalency degree (Tr. 109) and previously worked as a cashier (Tr. 42, 109-10, 115-22).

<u>Applications for Benefits and Findings</u>

Plaintiff protectively applied for Supplemental Security Income in May 2010, alleging disability beginning in June 2007 (Tr. 47, 89-93).   This application was denied initially and on reconsideration (Tr. 47-56).   At Plaintiff's request (Tr. 57-58), an administrative law judge (ALJ) held a hearing (Tr. 27-44).   The ALJ then issued a decision finding Plaintiff not disabled (Tr. 8-26), and the Appeals Council denied her request for review (Tr. 1-6).   This case is ripe for judicial review.

<u>Standard of Review - Findings of ALJ</u>

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.   42 U.S.C. § 423(d)(1)(A). The burden of proof in a claim for social security benefits is upon the claimant to show disability.   *Barney v. Sec'y of Health & Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).   Once the claimant makes a prima facie case that he/she cannot return to his/her former occupation, however, the burden shifts to the Commissioner to show that there is work in the national economy which claimant can perform considering his/her age, education, and work experience.   *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).   "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record."   *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting

2

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

As the basis of the administrative decision that plaintiff was not disabled, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since May 17, 2010, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: coronary artery disease and bipolar disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) which involves no exposure to temperature extremes; ability to understand and remember simple to detailed instructions; ability to maintain attention, concentration, persistence and pace for at least two-hour periods; occasional interaction with the public and

3

co-workers; and infrequent changes in the workplace.

5.     The claimant is unable to perform past relevant work (20 CFR 416.965).

6.     The claimant was born on May 3, 1968 and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.     The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.     Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.     The record indicates the claimant has a history of alcohol use. While alcohol use has been intermittently noted by treating practitioners during the period at issue, there is no evidence that the claimant's alcohol use was of a level of severity as to meet the criteria of Section 12.09 or that alcohol use adversely impacted her ability to function during the period at issue. Accordingly, the undersigned finds that the claimant has no work limitations on the basis of alcohol use.

11.     The claimant has not been under a disability, as defined in the Social Security Act, since May 17, 2010, the date the application was filed (20 CFR 416.920(g)).

<u>Issue Raised</u>

(1) Whether substantial evidence supports the Administrative Law Judge's decision that Plaintiff failed to meet her burden of showing disability in or after May 2010.

    i.    Was it error to give little or no weight to the consultative examination of Dr. Samuel Breeding?

    ii.    Did the ALJ err in giving no weight to the July 6, 2011, opinion of Melisa McPeek, BS, of Adult Case Management Services from Hawkins County Mental Health Center?

4

iii.   Did the ALJ err in his credibility assessment of Plaintiff's claims of mental disorder, including anger control and inability to work around people?

<u>Medical Evidence and Plaintiff's Testimony</u>

Plaintiff claims she became disabled in June 2007 due to coronary artery disease, bipolar disorder, and hypertension (Tr. 108).

At the Administrative hearing Plaintiff testified she had the following limitations, both physical and mental:

1. "Just exhausted." (Tr. 34) She gave an example of having to move the washer and dryer from down in the basement to upstairs to accommodate her exhaustion and fatigue.   She says, "It just wears me out to do the simplest things." She explained that she did not know if the fatigue was associated with her medications, depression or her heart. (Tr. 37)   She described having trouble taking showers and bathing due to the fatigue. (Tr. 38) She stated she could occasionally wash dishes, sweep, wipe off counters but that these few tasks required her to use most of the day to complete and she could only do them a couple times per week. (Tr. 125, 144)

2. "Standing and sitting for long periods of time, my ankles will swell up.   My arms and hands swell and stay numb." (Tr. 35)

3. "I have difficulty getting along with others. (Tr. 35)   "I just go from one extreme to the other without provocation." (Tr. 35 and see also, Tr. 36)   The ALJ acknowledged the Plaintiff's issues by stating "Your doctors indicated that this has been a problem with you, impulsive behavior..." to which the claimant

5

responded "Yes." (Tr 35)   Plaintiff reported to the administration that her bi-polar disorder makes it almost impossible to deal with people in public because her getting angry leads to her cursing and becoming irate. (Tr. 123, 129, 142, 147, 148, 310)

4.  Lack of sleep and mood swings (described by the Judge and acknowledged by the Claimant.) (Tr. 37)   Plaintiff testified that she has problems with her sleep and doesn't take her Trazadone as much due to having very vivid dreams that troubled her. (Tr. 40)   She reported that her sleep was more restless and she couldn't feel rested. (Tr. 124, 143)

5.  Uncontrollable crying at times. (Tr. 37)

6.  Isolated and withdrawn (described by the Judge and acknowledged by the Plaintiff) (Tr. 37) Plaintiff testified she doesn't like being around people. (Tr. 38) She reported that she leaves the house but rarely. (Tr. 127)

7.  Doesn't handle stress well, will get chest pains, break out in tears or start screaming. (Tr. 38)

8.  She was sexually molested as a child. (Tr. 41)

**9.**  Her coronary artery disease keeps her from doing any strenuous activity. (Tr. 123) Her breathing is difficult and her chest hurts when participating in activities. (Tr. 128, 147)

Plaintiff's healthcare providers repeatedly advised her to quit smoking.   Following a cardiac catheterization in June 2007, Dr. Jack Whitaker advised Plaintiff to undergo "[a]ggressive medical management and lifestyle modification" (Tr. 184).   Dr. Whitaker also specifically cautioned Plaintiff to quit smoking in December 2007 (Tr. 168).   Dr. Marc Mayhew

6

advised Plaintiff to stop smoking in July 2009 (Tr. 193). Julie Bentley, a family nurse practitioner, observed in July 2010 that Plaintiff continued to smoke and did not completely comply with her medical therapy (Tr. 250). That same month, Dr. Whitaker discussed quitting smoking with Plaintiff "in detail" and encouraged her to quit using tobacco (Tr. 249). Notwithstanding these repeated instructions, Plaintiff continued smoking (Tr. 32).

Dr. James Turnbull, a psychiatrist at Hawkins County Mental Health Center (Hawkins Mental Health), examined Plaintiff in September 2007 and observed she was alert and oriented, cooperative, attentive, and calm (Tr. 317). Although Plaintiff had a depressed mood and sad affect, Dr. Turnbull observed her speech and thought processes were logical, coherent, and goal directed (Tr. 317). Debbie Bolton, an advanced registered nurse practitioner at Hawkins Mental Health, examined Plaintiff in November 2007 and observed she was pleasant, cooperative, and easily directed (Tr. 316). Ms. Bolton also observed Plaintiff interacted well with the interviewer and staff (Tr. 316). Ms. Bolton observed Plaintiff's eye contact was fair to good, thought processes were generally linear and goal-oriented, and insight and judgment were grossly intact (Tr. 316).

Connie Robinette, an advanced nurse practitioner at Hawkins Mental Health, examined Plaintiff in November 2009 and observed her concentration was good, mood was euthymic, and affect was normal in range, intensity, and stability (Tr. 303). Ms. Robinette also observed Plaintiff was alert and oriented, calm, and cooperative (Tr. 303). In January and March 2010, Ms. Robinette again observed Plaintiff's concentration appeared good, thought was logical, coherent, and goal directed, and that she was alert, oriented, calm, and cooperative (Tr. 299, 301). During appointments in May, July, and September 2010, Plaintiff reported issues with her family, including her daughter's pregnancy, and Ms. Robinette noted Plaintiff's concentration

7

appeared decreased (Tr. 293, 295, 297). Ms. Robinette started Plaintiff on Abilify (Tr. 293, 295), and by late September, Plaintiff reported she was doing "much better with restarting Abilify" (Tr. 291). Ms. Robinette observed at this latest appointment that Plaintiff's concentration was good (Tr. 291). Moreover, Ms. Robinette observed Plaintiff was alert, oriented, calm, and cooperative (Tr. 291). Ms. Robinette further observed Plaintiff's mood was euthymic, affect was normal in range, intensity, and stability, and thought was logical, coherent, and goal directed (Tr. 291). Plaintiff cancelled her next two appointments (Tr. 327-38), but in February 2011, Ms. Robinette observed Plaintiff's mental status was largely normal (Tr. 325). Plaintiff also reported she was "having fun with [her] new grand baby" (Tr. 325). She also reported sleeping well and having an adequate energy level (Tr. 325). Moreover, Plaintiff denied having any depression, sadness, crying spells, anxiety, or panic attacks (Tr. 325).

In March 2010, Melinda McPeek, a case manager at Hawkins Mental Health, opined Plaintiff had marked limitations in interpersonal functioning and moderate limitations in her activities of daily living, concentration, tasks, performance, and adaptation to change (Tr. 288). In July 2011, Ms. McPeek issued a letter stating Plaintiff qualified for case management services based on "major difficulty in appropriate interaction with the public, fluctuation of stability of symptoms and poor follow through with daily activities" (Tr. 346).

In July 2010, Dr. Jack Whitaker observed Plaintiff's carotid, radial, femoral, and pedal pulses were normal, equal, and symmetric (Tr. 248). Dr. Whitaker observed no edema and no varicosities in her arms and legs (Tr. 248). An x-ray in July 2010 showed no acute pulmonary disease (Tr. 257). An echocardiogram that same month was normal (Tr. 243-44), and a cardiac study in August 2010 showed normal left ventricular function (Tr. 241-42, 345). Additionally, Dr. Whitaker observed that pharmacologic stress testing showed no complications (Tr. 241-42,

8

345).

Dr. Samuel D. Breeding performed a consultative examination in August 2010 (Tr. 240). Plaintiff informed Dr. Breeding that physical activity causes chest pain and that she gets short of breath easily (Tr. 239). Dr. Breeding observed Plaintiff's gait and station was normal (Tr. 239). Despite some "trace" swelling (edema) in her ankles, Dr. Breeding observed Plaintiff had normal range of motion in all her joints and "5/5" strength in all her major muscle groups (Tr. 240). Dr. Breeding opined Plaintiff could not do sustained physical activity, yet could lift 15 pounds occasionally, sit four to six hours in an eight hour day, and stand up to four hours in an eight hour day (Tr. 20).

Dr. Anita L. Johnson reviewed the available medical evidence in August 2010 and determined Plaintiff could perform light work and that her claims of disabling symptoms were only partially credible (Tr. 278, 282, 284). Dr. James N. Moore reviewed the available medical evidence in November 2010, including the normal cardiac studies performed by Dr. Whitaker, and agreed with Dr. Johnson's assessment (Tr. 320).

Dr. Whitaker examined Plaintiff again in June 2011 and observed her cardiovascular examination was normal (Tr. 344). At this examination, Plaintiff specifically denied swelling (edema) in her legs (Tr. 342). Plaintiff also reported no joint swelling, no chest pain, no palpitations, and no intermittent leg claudication (Tr. 342). Plaintiff also did not report any limb weakness or difficulty walking (Tr. 343).

At the administrative hearing on July 8, 2011, Plaintiff reported swelling in her arms, hands, and ankles (Tr. 35). When asked to describe her "biggest problem" preventing her from working, Plaintiff alleged disabling fatigue due to her heart condition (Tr. 34). The ALJ determined Plaintiff's severe impairments included coronary artery disease and bipolar

9

disorder (Tr. 13 finding 2).    The ALJ determined she had the residual functional capacity (RFC) to perform light work with no exposure to temperature extremes (Tr. 16 finding 4).    The ALJ also determined she could understand and remember simple to detailed instructions, maintain attention, concentration, persistence, and pace for at least two-hour periods, occasionally interact with the public and coworkers, and handle infrequent changes in the workplace (Tr. 15 finding 4).

## Vocational Testimony

A vocational expert attended the hearing and testified an individual of Plaintiff's age, education, work experience, and RFC could work as a maid, housekeeping cleaner, janitor, building cleaner, stocking/material movers, hand-packer, dishwasher, and vehicle cleaner (Tr. 42-43).    The ALJ determined Plaintiff could perform other work in the national economy (Tr. 20-21).    The ALJ concluded she was not disabled (Tr. 21).

## Analysis

### The Substantial Evidence Argument – Dr. Breeding

Plaintiff argues it was error to give little or no weight to the consultative examination of Dr. Samuel Breeding.    For reasons that follow, I disagree.

To determine whether an individual is disabled, an ALJ will consider and weigh any available medical opinions together with the other relevant evidence.    20 C.F.R. § 416.927(b). A medical opinion is a statement from an acceptable medical source that reflects a judgment about the nature or severity of a claimant's impairments.    20 C.F.R. § 416.927(a)(2).    When weighing a medical opinion, an ALJ may consider whether (1) the opinion's source examined the claimant; (2) the source has a treating relationship with the claimant; (3) the opinion is supported by medical signs and laboratory findings; (4) the opinion is consistent with the record; and (5) the opinion is

10

related to the source's specialization.  *See* 20 C.F.R. § 416.927(c).  "It is the ALJ's place, and not the reviewing court's, to 'resolve conflicts in evidence."  *Collins v. Comm'r of Soc. Sec.,* 357 F. App'x. 663, 670 (6th Cir. 2009) (quoting *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987)) (internal quotation mark omitted).

The ALJ considered Dr. Breeding's opinion, and I agree with the Commissioner that substantial evidence supports his decision to give it no weight.  Dr. Breeding examined Plaintiff in August 2010 (Tr. 238).  Despite some "trace" swelling (edema) in her ankles, Dr. Breeding observed Plaintiff had normal range of motion in all her joints and "5/5" strength in all her major muscle groups (Tr. 240).  Dr. Breeding opined Plaintiff could not do sustained physical activity, yet could lift 15 pounds occasionally, sit four to six hours in an eight hour day, and stand up to four hours in an eight hour day (Tr. 20).

The ALJ noted Dr. Breeding's opinion appeared inconsistent with his examination, which was "completely normal" (Tr. 20).  *See* 20 C.F.R. § 416.927(c)(4) (permitting ALJ to weigh medical opinion based on its consistency with other evidence); *see Pasco v. Comm'r of Soc. Sec.,* 137 F. App'x. 828, 836 (6th Cir. 2005) (affirming determination that headaches were not severe based in part on lack of objective evidence supporting the claimed headaches).  Dr. Breeding observed Plaintiff's gait and station was normal (Tr. 239).  Despite some "trace" swelling (edema) in her ankles, Dr. Breeding observed Plaintiff had normal range of motion in all her joints and "5/5" strength in all her major muscle groups (Tr. 240).  These observations provide a valid basis to reject Dr. Breeding's opinion that Plaintiff could not do sustained activity.

The ALJ also appropriately noted that Dr. Breeding's examination was based on Plaintiff's subjective complaints.  An ALJ will give "more weight" to a medical source's opinion if the source provides "relevant evidence to support [his or her] opinion, particularly medical signs and

11

laboratory findings." 20 C.F.R. § 404.1527(c)(3). The Sixth Circuit has held an ALJ may reject medical opinions formed "solely from [the claimant's] reporting of her symptoms and conditions." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007). Plaintiff informed Dr. Breeding that physical activity causes chest pain and that she gets short of breath easily (Tr. 239). As the ALJ observed, however, Dr. Breeding's examination findings were normal, showing Plaintiff's gait, station, range of motion in her joints, and strength in her major muscle groups were normal (Tr. 240). Once again, given these normal examination findings, the ALJ appropriately concluded that Dr. Breeding based his opinion on Plaintiff's subjective complaints, supporting the ALJ's decision to give it no weight (Tr. 20). *See* 20 C.F.R. § 416.927(c)(3); *Smith*, 482 F.3d at 877.

Further, the ALJ pointed to contradictions in the opinion of Dr. Breeding. *See* 20 C.F.R. § 416.927(c)(4). Dr. Breeding opined Plaintiff could not perform "sustained physical exertion," yet he also stated that during an eight-hour day she could stand for four hours, sit for four to six hours, and lift up to 15 pounds occasionally (Tr. 240). He did not issue any limitations regarding her ability to perform other activities, such as pushing, pulling, or climbing ladders or stairs (Tr. 240). Because Dr. Breeding's opinion regarding Plaintiff's ability to perform sustained physical exertion appeared inconsistent with his opinion that she could lift up to 15 pounds occasionally or stand up to four hours, the ALJ had another basis to decline to accept his opinions. *See* 20 C.F.R. § 416.927(c)(4); *Collins*, 357 F. App'x. at 670 ("It is the ALJ's place, and not the reviewing court's, to 'resolve conflicts in evidence.'" (quoting *Gaffney*, 825 F.2d at 100) (internal quotation mark omitted)).

<u>The Substantial Evidence Argument – B. Melisa McPeek, BS</u>

Plaintiff next argues it was error to give no weight to the July 6, 2011 letter of B. Melisa

12

McPeek, BS, of the Adult Case Management Service of the Hawkins County Mental Health Center. Once again, I conclude there is substantial evidence to support the conclusion of the ALJ. An ALJ will weigh opinions from medical sources, such as nurse practitioners, physician assistants, and licensed clinical social workers, even though they do not qualify as "acceptable medical sources." See Social Security Ruling (SSR) 06-03p, 2006 WL 2329939, at *5-6. The ALJ will weigh the opinions based on the factors for weighing medical opinions. See id., at *5; see also 20 C.F.R. § 416.927(d)(1)-(6) (listing factors for weighing medical source opinions). Substantial evidence supports the ALJ's decision to give Ms. McPeek's opinion no weight. In March 2010, Ms. McPeek opined Plaintiff had marked limitations in interpersonal functioning and moderate limitations in her activities of daily living, concentration, tasks, performance, and adaptation to change (Tr. 288). The ALJ gave this opinion no weight because Ms. McPeek was not an acceptable medical source and the opinion was not consistent with the other medical evidence (Tr. 20).[1]

The ALJ observed that Ms. McPeek was not an acceptable medical source (Tr. 20). Acceptable medical sources are physicians and (when evaluating impairments related to their specialty) psychologists, optometrists, podiatrists, and speech-language pathologists. 20 C.F.R. § 404.1513(a)(1)-(5). Ms. McPeek is not a physician or psychologist (Tr. 346). Therefore, the ALJ properly declined to accept her assessment of Plaintiff's mental limitations. See Pendleton v. Astrue, No. 11–307–KSF, 2012 WL 1571296, at *6 (E.D. Ky. May 3, 2012) (finding ALJ properly

---

[1] In challenging this determination, Plaintiff's attorney could not locate Ms. McPeek's March 2010 opinion and instead focused on a letter that she wrote in July 2011 (Pl.'s Br. at 12). In that letter, Ms. McPeek largely restated her March 2010 opinions, stating Plaintiff had "major difficulty in appropriate interaction with the public, fluctuation of stability of symptoms and poor follow through with daily activities" (Tr. 346).

13

rejected nurse's opinion that claimant was disabled and noting a nurse "is not an acceptable medical source").

The ALJ also concluded Ms. McPeek's opinion was not consistent with the other evidence. Plaintiff's generally normal mental evaluations lend support to this conclusion (Tr. 20). *See* 20 C.F.R. § 416.927(c)(4). For example, Dr. James Turnbull examined Plaintiff in September 2007 and observed she was alert and oriented, cooperative, attentive, and calm (Tr. 17, 317). Although Plaintiff had a depressed mood and sad affect, Dr. Turnbull observed her speech and thought processes were logical, coherent, and goal directed (Tr. 17, 317). Debbie Bolton, an advanced registered nurse practitioner, examined Plaintiff in November 2007 and observed she was pleasant, cooperative, and easily directed (Tr. 17, 316). Ms. Bolton also observed Plaintiff interacted well with the interviewer and staff (Tr. 316). Ms. Bolton observed Plaintiff's eye contact was fair to good, thought processes were generally linear and goal-oriented, and insight and judgment were grossly intact (Tr. 17, 316). These examinations support the ALJ's decision not to accept the limitations outlined by Ms. McPeek (Tr. 288, 346).

Subsequent examinations by Connie Robinette, an advanced practice nurse, further show Plaintiff's mental status was generally intact. *See* 20 C.F.R. § 416.927(c)(4). Ms. Robinette examined Plaintiff in November 2009 and observed her concentration was good, mood was euthymic, and affect was normal in range, intensity, and stability (Tr. 18, 303). Ms. Robinette also observed Plaintiff was alert and oriented, calm, and cooperative (Tr. 18, 303). In January and March 2010, Ms. Robinette again observed Plaintiff's concentration appeared good, thought was logical, coherent, and goal directed, and that she was alert, oriented, calm, and cooperative (Tr. 299, 301). During appointments in May, July, and September 2010, Plaintiff reported issues with her family, including her daughter's pregnancy, and Ms. Robinette noted Plaintiff's

14

concentration appeared decreased (Tr. 293, 295, 297). Ms. Robinette started Plaintiff on Abilify (Tr. 293, 295), and by late September, Plaintiff reported she was doing "much better with restarting Abilify" (Tr. 291). Ms. Robinette observed at this latest appointment that Plaintiff's concentration was good (Tr. 291). Moreover, the remainder of Plaintiff's mental status examination was "entirely normal" (Tr. 18): Ms. Robinette observed Plaintiff was alert, oriented, calm, and cooperative (Tr. 291). Ms. Robinette further observed Plaintiff's mood was euthymic, affect was normal in range, intensity, and stability, and thought was logical, coherent, and goal directed (Tr. 291). Plaintiff cancelled her next two appointments (Tr. 327-38), but in February 2011 Ms. Robinette observed Plaintiff's mental status was largely normal (Tr. 325). Plaintiff also reported she was "having fun with [her] new grand baby" (Tr. 325). Moreover, Plaintiff denied having any depression, sadness, crying spells, anxiety, or panic attacks (Tr. 325). These treatment notes showing generally normal mental functioning support the ALJ's decision not to accept Ms. McPeek's description of Plaintiff's mental limitations. *See* 20 C.F.R. § 416.927(c)(4).

If there is substantial evidence to support the Commissioners findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. Smith v. Chater, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548

15

(6th Cir. 1986)); *Crisp v. Secy of Health & Human Servs.,* 790 F.2d 450, 453 n.4 (6th Cir. 1986).

Here there was an adequate basis to support the conclusion of the ALJ.

<u>Sentence Six Remand</u>

Plaintiff asks for an award of benefits but in the alternative, she seeks remand for a mental

evaluation and for the ALJ's consideration of the report of William Stanley, M.Ed. psychological

examiner (Doc. 11, Plaintiff's Memorandum at 17).   The evaluation of William Stanley was not

before the ALJ and was submitted more than a month and one half after the Administrative

Decision.   It is unclear to the undersigned when Plaintiff first saw William Stanley but the report

indicates her last visit with him was September 9, 2011, a month and one half after the

administrative decision (Tr. 22, 359). The Commissioner argues the evidence Plaintiff submitted

to the Appeals Council after the ALJ's decision does not warrant remand (Tr. 347-59, Pl.'s Br. at

13).[2]   The Commissioner notes that a court may consider evidence submitted to the Appeals

Council only to determine whether the evidence warrants remand under sentence six of 42 U.S.C.

§ 405(g).   *See Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 148 (6th Cir. 1996).   The

Commissioner notes that although Plaintiff cites this evidence in passing (Pl.'s Br. at 13), she has

not requested a sentence six remand (Pl.'s Br. at 13); therefore, this Court need not consider this

evidence.   *See Wilson v. Comm'r of Soc. Sec.,* 280 F. App'x. 456, 460, n.2 (6th Cir. 2008)

("Because Wilson never placed this information before the ALJ, we may not consider it.   Nor has

Wilson sought a 'sentence six' remand to place this new evidence before the ALJ." (citation

omitted)); *cf. McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in

---

[2]   The evidence includes a psychological examination report from Dr. William E. Stanley
(Tr. 354-59) and an assessment from him stating Plaintiff was moderately or markedly limited in
various areas of mental functioning (Tr. 349-51).

16

a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived" (alteration in original)).

Since this evidence, the report of William Stanley was not presented in the administrative hearing, it can only be considered in the context of a Sentence Six remand. Even though Plaintiff did not specifically mention Sentence Six in her memorandum, she did refer to the opinion which did not exist until after the administrative decision and did ask for remand. I will consider this a request for a sentence six remand even though there is no specific articulation of sentence six. In order to remand a case for further consideration of additional evidence, plaintiff must show that the additional evidence is new and material and there is good cause for his or her failure to incorporate such evidence in the record during the prior proceedings. *See* 42 U.S.C. 405(g); *Cline v. Commissioner of Social Security*, 96 F.3d 146, 149 (6th Cir. 1996); *Casey*, 987 F.2d 1230 at 1233 (6th Cir. 1993). Good cause is shown when the claimant gives a valid reason for failing to obtain relevant evidence prior to the hearing. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir. 1988). Additional evidence is new if it was not in existence or available to the claimant at the time of the administrative proceedings. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). Additional evidence is material only if there is a reasonable probability that the ALJ would have reached a different disposition of the disability claim if presented with the evidence. The party seeking remand has the burden to show that remand is appropriate. *See Oliver v. Secy of Health and Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *Sizemore*, 865 F.2d at 711. The party seeking the remand bears the burden of showing that remand is proper. *Longworth v. Commissioner of Social Security*, 402 F.3d 591, 598 (6th Cir. 2005).

In this case the evidence is new because it did not exist until approximately 45 days after

17

the Administrative Decision.  However it fails to satisfy either the good cause requirement or the materiality requirement. Plaintiff does not address why this evidence could not have been presented prior to the Administrative decision.  She has failed to show good cause.  Additional evidence is material only if there is a reasonable probability that the ALJ would have reached a different disposition of the disability claim if presented with the evidence.  A subsequent deterioration or change in condition is not material; rather, if a plaintiff's condition seriously degenerates, as is alleged by Plaintiff, the appropriate remedy would be to initiate a new claim for benefits as of the date the condition aggravated to the point of constituting a disabling impairment. *Sizemore v. Secy of HHS*, 865 F.2d 709, 712 (6th Cir. 1988).  If her condition deteriorated since the date of the decision, and evidence of this exists, the proper remedy is for her to file a new claim based on her current medical condition. There is no way for me to assess whether the condition described by William Stanley is simply a result of a deterioration of Plaintiff's condition.  If so it would not be material to the time period in question.  For those reasons, I do not recommend remand under sentence six.

### The ALJ's Credibility Assessment of Plaintiff

Finally, Plaintiff argues the ALJ erred in his assessment of her credibility related to her claims of mental disorder including anger control and inability to work around people.  Where a claimant alleges he or she has disabling subjective symptoms, the ALJ must determine whether the claimant has a condition that could reasonably be expected to cause the alleged symptoms.  See 20 C.F.R. § 416.929(c)(1).  If the ALJ determines the claimant has such a condition, the ALJ must evaluate the intensity and persistence of the alleged symptoms and determine how they limit the claimant's ability to work.  *See id.*  The ALJ will consider the claimant's testimony regarding his or her symptoms, including any inconsistencies between the testimony and the other evidence.

18

*See* 20 C.F.R. § 416.929(c)(3)-(4).

"'[A]n ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability.'" *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (quoting *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 476 (6th Cir. 2003)). An ALJ may find that a claimant is not credible if there are "'contradictions among the medical reports, claimant's testimony, and other evidence.'" *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 392 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). "[W]e are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476; *see also Cruse*, 502 F.3d at 542 ("[A]n ALJ's credibility determinations . . . are to be given great weight . . . ."). The ALJ considered Plaintiff's claims of disabling symptoms and properly determined her "impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC finding]" (Tr. 18). In reaching this determination, the ALJ considered the objective medical evidence, statements from the medical sources, Plaintiff's inconsistent statements, and her treatment for her alleged impairments (Tr. 15-20).

The Commissioner argues the objective medical evidence supports the ALJ's determination and points to reports discussed hereafter. *See* 20 C.F.R. § 416.929(c)(2) (permitting ALJ to consider objective medical evidence when evaluating claimant's alleged symptoms); *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 524 (6th Cir. 2008) (affirming determination that claimant's alleged symptoms were not supported by objective medical

19

evidence).   When asked to describe her "biggest problem" preventing her from working, Plaintiff alleged disabling fatigue due to her heart condition (Tr. 34, 35).   An x-ray in July 2010, however, showed no acute pulmonary disease (Tr. 16, 257).   An echocardiogram that same month was normal (Tr. 16, 243-44), and a cardiac study in August 2010 showed normal left ventricular function (Tr. 16, 241-42, 345).   Additionally, Dr. Whitaker observed that pharmacologic stress testing showed no complications (Tr. 16, 241-42, 345).   This generally normal testing supports the ALJ's decision not to accept Plaintiff's claims of disabling symptoms.   *See* 20 C.F.R. § 416.929(c)(2); *McGlothin*, 299 F. App'x at 524.

Dr. Jack Whitaker's observations showing no significant cardiovascular abnormalities, which further supports the ALJ's decision.   *See* 20 C.F.R. § 416.929(c)(3) (requiring ALJ to consider statements submitted by medical sources when evaluating claimant's allegations of disabling symptoms).    In July 2010, Dr. Whitaker observed Plaintiff's carotid, radial, femoral, and pedal pulses were normal, equal, and symmetric (Tr. 16, 248).   Dr. Whitaker observed no edema and no varicosities in her arms and legs (Tr. 16, 248).   Additionally, Dr. Whitaker examined Plaintiff again in June 2011 and observed her cardiovascular examination was normal (Tr. 17, 344).

The opinions of Dr. Anita L. Johnson and Dr. James N. Moore provide further support of the ALJ's credibility determination (Tr. 20).   *See* 20 C.F.R. § 404.1529(c)(3).   In a Residual Functional capacity report Dr. Johnson, a non-examining State Agency Physician, reviewed the available medical evidence in August 2010 and determined Plaintiff could perform light work and that her claims of disabling symptoms were only partially credible (Tr. 20, 278, 282, 284).   Similarly, Dr. Moore, another non-examining State Agency Physician, reviewed the available medical evidence in August 2010, including the normal cardiac studies performed by Dr.

20

Whitaker, and agreed with Dr. Johnson's assessment (Tr. 20, 320).   Dr. Johnson's and Dr.

Moore's medical opinions support the ALJ's determination that Plaintiff's claims of disabling

symptoms were not credible.   *See* 20 C.F.R. § 416.929(c)(3).

Plaintiff's inconsistent statements also support the ALJ's credibility determination (Tr. 19).

See SSR 96-7p, 1996 WL 374186, at *5 (permitting ALJ to "evaluate all . . . information and draw

appropriate inferences and conclusions about the credibility of [a claimant]").   At the

administrative hearing on July 8, 2011, Plaintiff reported swelling in her arms, hands, and ankles

(Tr. 35).   One month earlier, however, Plaintiff specifically denied swelling (edema) in her legs

(Tr. 17, 342).   Plaintiff also reported no joint swelling, no chest pain, no palpitations, and no

intermittent leg claudication (Tr. 17, 342).   Plaintiff also did not report any limb weakness or

difficulty walking (Tr. 343).   Plaintiff also complained of fatigue at the administrative hearing

(Tr. 20, 34), but in February 2011 she reported sleeping well and having an adequate energy level

(Tr. 20, 325).[3]

The ALJ properly considered Plaintiff's continued smoking and noncompliance with her

medical treatment when declining to accept her claims of disabling coronary artery disease

(Tr. 19).   An ALJ may evaluate a claimant's allegations of disabling symptoms in light of the

treatment he or she has received.   See 20 C.F.R. § 416.929(c)(3)-(4); *Holland v. Comm'r of Soc.

Sec.,* 528 F. Supp. 2d 728, 731 (W.D. Mich. 2007) ("The ALJ could logically view Holland's

noncompliance with part of the prescribed treatment regimen . . . as evidence that her functional

limitation and pain, while real, were not quite as severe as she alleged." (citing *Strong v. Soc. Sec.*

---

[3]  Although Plaintiff now argues she "didn't know what was causing her fatigue" (Pl.'s Br. at 16), this does not entirely respond to the ALJ's analysis.   Even if Plaintiff did not know what caused her fatigue, the ALJ still correctly observed that her complaints of fatigue were inconsistent with her February 2011 reports of sleeping well and having an adequate energy level (Tr. 20, 325).

*Admin.*, 88 F. App'x. 841, 846 (6th Cir. 2004))).   Plaintiff alleged that fatigue from her heart condition was her "biggest problem" (Tr. 34).   When seeking treatment for this condition, however, she did not follow her doctors' instructions to stop smoking.   Following a cardiac catheterization in June 2007, Dr. Whitaker advised Plaintiff to undergo "[a]ggressive medical management and lifestyle modification" (Tr. 184).   Dr. Whitaker also specifically cautioned Plaintiff to quit smoking in December 2007 (Tr. 168).   Dr. Marc Mayhew advised Plaintiff to stop smoking in July 2009 (Tr. 193).   Julie Bentley, a family nurse practitioner, observed in July 2010 that Plaintiff continued to smoke and did not completely comply with her medical therapy (Tr. 250).   That same month, Dr. Whitaker discussed quitting smoking with Plaintiff "in detail" and encouraged her to quit using tobacco (Tr. 249).   Notwithstanding these repeated instructions, Plaintiff continued smoking (Tr. 32).   Plaintiff's repeated noncompliance with her doctors' instructions supports the ALJ's determination that Plaintiff's claims of disabling symptoms were not credible.   *See* 20 C.F.R. § 416.929(c)(3)-(4); *Holland*, 528 F. Supp. 2d at 731.

In challenging this determination, Plaintiff argues that quitting smoking, exercising, or changing her diet may not have improved her condition (Pl.'s Br. at 16).   I agree with the Commissioner that this uncertainty, however, does not undermine the ALJ's analysis.   Regardless of whether Plaintiff's treatment would have improved her condition, the ALJ properly considered her failure to comply with the treatment as evidence that her symptoms (and their effect on her ability to work) were not as extreme as she alleged.   *See Lawson v. Soc. Sec. Admin.*, No. 2:09-0098, 2011 WL 465490, at *6 (M.D. Tenn. Feb. 4, 2011) ("In so doing, the ALJ did not conflate the issues of credibility and failure to follow prescribed treatment . . . as plaintiff argues, but merely (and quite properly) found the latter relevant to the former." (citing SSR 96-7p, 1996

22

WL 374186, at *7)).   ALJ's findings as to a claimant's credibility receive "great weight and deference" if supported by substantial evidence. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).   I conclude there is substantial evidence in this case to support the ALJ's finding that Plaintiff was not fully credible regarding the extent of limitations caused by her mental disorder.   An ALJ's credibility finding is entitled to substantial deference because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints. *See Jones v. Comm'r of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003).

<u>Conclusion</u>

Having carefully reviewed the administrative record and the briefs of the parties filed in support of their respective motions, I conclude there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner denying the plaintiff's application for benefits. Accordingly, I RECOMMEND:

(1)     The plaintiff's motion for judgment on the pleadings (Doc. 10) be DENIED;

(2)     The defendant's motion for summary judgment (Doc. 12) be GRANTED;

(3)     A judgment be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure AFFIRMING the Commissioner's decision which denied benefits to the plaintiff; and,

(4)     This action be DISMISSED. [4]

S /William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[4]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure.   Failure to file of objections within the time specified waives the right to appeal the District Court's order.   *Thomas v. Arn*, 474 U.S. 149, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general.   *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986).   Only specific objections are reserved for appellate review.   *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

24